UNITED STATES *v.* MULHENS & KROPFF *et als.* (No. 1152).[1]

WICKER COVERED GLASS BOTTLES NOT PLAIN BOTTLES.

> The merchandise is composed of glass bottles and woven willow, and the willow is so woven and attached to the bottles that it produces an article differing from what is commonly understood to be a plain green, etc., glass bottle. The wicker is the component material of chief value, and the bottle so covered is classifiable as a manufacture of willow under paragraph 214 per force of paragraph 481, tariff act of 1909. United States *v.* Zinn (2 Ct. Cust. Appls., 419; T. D. 32171) distinguished.

United States Court of Customs Appeals, November 18, 1913.

APPEAL from Board of United States General Appraisers, G. A. 7441 (T. D. 33241).

[Reversed.]

*William L. Wemple*, Assistant Attorney General (*Leland N. Wood*, special attorney, on the brief), for the United States.

*Comstock & Washburn* (*John A. Kratz, jr.*, of counsel; *George J. Puckhafer*, on the brief) for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, AND MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

Two different kinds of merchandise are involved in this case. One, an empty glass bottle covered on the outside with willow strands, sometimes referred to as wicker, closely woven around the bottle and tightly drawn, so that none of the glass is visible except about one-half inch at the top. The bottle can not be withdrawn from the willow without destroying or unweaving it. A representative sample of this merchandise is before us. No sample of the other is presented, but it is agreed that it is like the one mentioned, except that it has a metal top. In each case the merchandise was returned as an entirety and assessed for duty under paragraph 212 of the act of 1909 at 45 cents ad valorem.

The importers protested the assessment, claiming before the board and here that the merchandise was properly dutiable under paragraph 97 of the same act, and the board sustained the protests.

The relevant part of paragraph 212, and under which the Government seeks to sustain the assessment, is as follows:

* * * Manufactures of osier or willow, * * * forty-five per centum ad valorem.

---

[1] Reported in T. D. 33917 (25 Treas. Dec., 525).

The material part of paragraph 97 is as follows:

Plain green or colored, molded or pressed, and flint, lime, or lead glass bottles, vials, jars, and covered or uncovered demijohns, and carboys, any of the foregoing, filled or unfilled, not otherwise specially provided for in this section, and whether their contents be dutiable or free (except such as contain merchandise subject to an ad valorem rate of duty, or to a rate of duty based in whole or in part upon the value thereof which shall be dutiable at the rate applicable to their contents), * * *: *Provided*, That none of the above articles shall pay a less rate of duty than forty per centum ad valorem: *Provided further*, That the terms bottles, vials, jars, demijohns, and carboys, as used herein, shall be restricted to such articles when suitable for use as and of the character ordinarily employed as containers for the holding or transportation of merchandise, and not as appliances or implements in chemical or other operations.

No evidence other than the exhibit and the papers in the cases was before the Board of General Appraisers.

The exact value of the wicker as compared with the glass bottle in the one case, or the glass bottle with its wicker covering and metal top in the other, does not appear, nor does it appear how the value of the metal top compares with the bottle to which it is fitted, but it is conceded that the willow is the component material of chief value in each entirety as imported.

In its opinion the board used the following language:

In G. A. 5921 (T. D. 26033) this board held that empty chianti glass bottles covered with wicker were dutiable at 40 per cent ad valorem, that rate being greater than the specific rate per pound provided for bottles of the capacity of those in question in paragraph 99 of the act of 1897. In the case cited the bottles were of more value than the wickerwork, and they were assessed with duty as manufactures of glass at 45 per cent ad valorem under paragraph 112 of said act. We do not regard as material the relative value of the bottles and wickerwork, for the reason that the latter are usual coverings for bottles commonly employed in protecting the bottles from breakage, and of the further fact that the merchandise is "bottles," provided for *eo nomine* in paragraph 97 of the present act, which is a more specific enumeration than that for "manufactures of willow."

Its opinion in the case at bar was rested upon the authority of Hempstead *v.* United States (168 Fed., 450), Woodruff *v.* United States (168 Fed., 452), and the case of United States *v.* Zinn (2 Ct. Cust. Appls., 419; T. D. 32171). The board says with reference to the case last mentioned that this court therein " decided that baskets composed of straw, willow, rattan, and wood, lined and padded with silk, silk being the component material of chief value, were dutiable as baskets of wood under paragraph 214 and not as manufactures in chief value of silk under paragraph 403 of the act of 1909."

With reference to the Zinn case, we pause here to say that the opinion of this court, by Montgomery, Presiding Judge, states:

An analysis of the original material of which the basket as thus lined was composed showed the chief value of the raw material to be silk. It does not appear that the value of the lining exceeded that of the finished basket.

Attention is called to this now because the board in the case at bar assumes that in the Zinn case silk was the component material of chief value, while from the last-quoted statement it appears that this court did not so understand in that case.

It is manifest that the important question for determination here is whether the merchandise in this case is a plain green, etc., glass bottle within the meaning of paragraph 97. By the appraiser in the one case, the glass part of the article was said to be an empty glass bottle, and in the other case it was said to be a plain glass bottle. The board found upon the exhibit that the bottle part was "plain green or colored, molded, or pressed glass." Both parties, as we understand, assume that the bottles, independent of their covering, fall within that description, and we dispose of the case upon that theory.

The Government's main contention is that the merchandise here, although one essential part thereof is a plain green, etc., glass bottle, is not such as a whole, while the importers rely upon the contrary view.

We think it may be said that if the wicker which covers and incloses the bottles, as already appears, was removed, the merchandise would be dutiable as claimed by the importers, because it would then be a plain green, etc., glass bottle, not covered in any way, and would doubtless be one of the class to which the proviso of this paragraph restricts the same.

In its imported form, namely, in the one case with the willow closely woven about it, and in the other, with the same woven willow and the additional metal top, whatever that may be, we think it is apparent that the article has passed beyond the common meaning of the term " plain green, etc., glass bottles," as used in paragraph 97.

There is no question of commercial designation in this case. Disregarding for the moment the metal top, the merchandise is composed of glass bottles and woven willow, and the willow is so woven and attached to the bottles that it produces, as we think, different articles than what are commonly understood to be plain green, etc., glass bottles. They are more accurately described as either wicker bottles or wicker-covered glass bottles. The wicker, by its combination with the glass, has become an important element in the entirety in that it tends to protect the inner bottle from breakage. It therefore imparts to the entirety, when used for a container, an additional element of durability which, before the wicker was added, the interior glass bottle itself did not possess. This durability is an important item, so far at least as shipping and handling is concerned, and, in addition, the wicker has become the component material of chief value in the article as imported.

We think this method of combining the willow and the bottle in the one case and the bottle with its metal top and the willow in the other case clearly brings the importations within the definition of a

manufacture, and, willow being concededly the component material of chief value, we think it should be classified as a manufacture of willow under paragraph 214, at least so per force of paragraph 481, as claimed by the Government.

There is too, we think, much force in the Government's contention that by the use of the words "covered or uncovered" in paragraph 97 and which is plainly limited therein to demijohns and carboys, there is an implied expression of congressional intent that a plain green, etc., glass bottle, if covered, might not be subject to the provisions of that paragraph. This is upon the familiar principle of *expressio unius est exclusio alterius*, concerning the propriety of the application of which it is unnecessary to cite authorities.

If it were to be held that the merchandise now in suit is a plain green, etc., glass bottle, it is somewhat difficult to see where a like classification of similar articles would stop. The importers claim that if a plain green or colored, etc., glass bottle be covered with leather and fitted with a metallic stopper, the entire article would, nevertheless, take the classification of plain green, etc., glass bottles, regardless of the value of the leather and the stopper or the extended use that might be given thereby. Many similar illustrations readily suggest themselves, and if it were to be held as claimed it would result in saying that if the inner part of the article, and which was the immediate container, was a plain green, etc., glass bottle, that fact alone would determine its classification. We do not think such was the legislative intent.

We do not regard the chianti glass bottle case, mentioned by the board in its decision, which may be found in G. A. 5921 (T. D. 26033), as at all controlling, because of the difference in the facts. There the merchandise was a flask fitted with a fibrous wicker covering surrounding the bulbous part of the bottle, forming a base upon which it might be rested in an upright position. While the board does not state what the fact was in that respect, what it does state is consistent with the view that the bottle was easily removable from the wicker covering and without injury to either the bottle or the covering, and apparently the glass bottle was the component material of chief value of the imported merchandise. It is said by the board in the chianti case that it had held in numerous decisions that both plain and wicker-covered bottles imported filled with olive oil had been treated as dutiable under paragraph 99 of the act of 1897, the immediate predecessor of paragraph 97 of the act of 1909, now before us, and that it would be anomalous to hold that they were dutiable under a different paragraph when imported empty than when imported filled with olive oil.

We know not how this may be, but think this case should nevertheless be decided upon its own particular facts.

In G. A. 6931 (T. D. 29996), involving paragraph 99 of the act of 1897, " icy-hot bottles " were considered by the board. They were

made by inserting a smaller bottle in a larger one, leaving a space between the two and fusing them at the neck; a silver solution was then inserted, coating the walls of the bottles, after which the air was exhausted and the neck hermetically sealed; the silvering of the interior surfaces and the vacuum produced between the same served to prevent the radiation of heat from the interior bottle or the entrance of heat or cold from the outside, as the case might be. The board was urged to say that these articles were plain green, etc., glass bottles, which was apparently the correct description of each bottle in the first instance, but it held instead that they were manufactures of glass and metal. It appeared in this case that glass was the component material of chief value.

It seems to us the conclusion in that case is in accord with the one we reach here.

Any reference to the Hempstead or Woodruff cases seems to be unnecessary, because of the difference in the language of the statutes under consideration and in the material facts.

The judgment of the Board of General Appraisers is *reversed*.