HENSEL, BRUCKMANN & LORBACHER *v*. UNITED STATES (No. 1492).[1]

1. "COMPOSED OF."

A tariff provision for a manufactured article "composed of" a certain material applies, in the absence of other controlling rules of construction, to the appropriate article if composed in chief value of the given material.

2. PROREPEL FANCY METAL PENCILS.

These articles are composed in chief value of metal with a substantial minor value of other material, the metal value distinctly preponderating. They fall within the terms of paragraph 356, tariff act of 1913.

United States Court of Customs Appeals, May 18, 1915.

APPEAL from Board of United States General Appraisers, G. A. 7625 (T. D. 34870).

[Affirmed.]

*Walden & Webster* for appellants.

*Bert Hanson*, Assistant Attorney General (*Charles E. McNabb*, assistant attorney, of counsel; *Leland N. Wood*, special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

This appeal relates to certain novelty lead pencils called "prorepel" pencils, which were assessed with duty at 60 per cent ad valorem under paragraph 356, tariff act of 1913, under the provision in that paragraph for articles valued above 20 cents per dozen pieces designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, card cases, chains, cigar cases, etc., composed of metal. The protest claimed an assessment of the merchandise at 20 per cent ad valorem as articles composed in chief value of metal under paragraph 167, being the residu-

[1] Reported in T. D. 35434 (28 Treas. Dec., 831).

ary paragraph of the metal schedule of the act. The protest also claimed a rebate of 5 per cent ad valorem upon whatever duties might be assessed upon the importations under the provisions of section 4, paragraph J, subsection 7, of the same act, but no testimony appears in the record in support of this claim, and it is therefore regarded as waived so far as the present case is concerned.

The Board of General Appraisers overruled the protest and the importers have appealed.

The present articles are lead pencils having the so-called "prorepel" and "refill" features. They are composed of a metal barrel, which has at one end a tapering tube or nozzle made of gallilith. This holds a piece of writing lead which may be moved in and out of the tube by turning the barrel. When the lead is extended the pencil is ready for use; when it is withdrawn the pencil may be carried in a purse or pocket without fear of soiling or puncturing the same. At the end of the barrel opposite the lead is a gallilith plug or cap which covers a small receptacle wherein spare or extra leads may be kept. The articles are valued at more than 20 cents per dozen pieces. Metal is the component material of chief value and predominates in the frame and bulk of the pencils, but the gallilith comprises a substantial minor part of the value of the articles.

This court in a decision handed down at the present term in the case of Gallagher & Ascher *v.* United States (6 Ct. Cust. Appls., 105; T. D. 35343) has held that pencils identical with the present ones in every particular, except that they were composed entirely of metal, were dutiable under the provision under which the present articles were assessed by the collector. The issue and the articles involved in the two cases are therefore identical, except that in the former case the pencils in question were composed entirely of metal, whereas in the present case they are composed only in chief value of metal, and in a substantial minor value of gallilith.

It is contended by the importers that the provisions of paragraph 356, under which the present articles were assessed by the collector, include only such articles as are composed wholly of metal, or of metal combined with an insignificant and negligible addition of other material, and therefore that the present articles are excluded therefrom. The importers contend that these articles are dutiable under paragraph 167, same act, under the provision therein contained for articles composed in chief value of metal. It therefore appears that the sole question now before the court is whether the descriptive phrase "composed of metal," appearing in paragraph 356, tariff act of 1913, covers and includes articles which are otherwise appropriate, but which are composed only in chief value of metal and have a substantial minor value of foreign material.

The following is a copy of the statutory provisions thus drawn in question:

356. * * * And articles valued above·20 cents per dozen pieces designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, card cases, chains, cigar cases, cigar cutters, cigar holders, cigarette cases, cigarette holders, coin holders, collar, cuff, and dress buttons, combs, match boxes, mesh bags and purses, millinery, military, and hair ornaments, pins, powder cases, stamp cases, vanity cases, and like articles; all the foregoing and parts thereof, finished or partly finished, composed of metal, whether or not enameled, washed, covered, or plated, including rolled gold plate, and whether or not set with precious or semiprecious stones, pearls, cameos, coral, or amber, or with imitation precious stones or imitation pearls, 60 per centum ad valorem. * * *

167. Articles or wares not specially provided for in this section; * * * if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with gold or silver, and whether partly or wholly manufactured, 20 per centum ad valorem.

It may be repeated that the sole question before the court is whether the phrase "composed of metal" in the foregoing provision includes or applies to articles which would otherwise come within the provision but which are composed only in chief value of metal and have a substantial minor value of other material. It may be noted that there is no question of commercial designation in the present case, nor does the rule of *ejusdem generis* apply with any degree of certainty to the present issue; nor does the provision in question contain the terms "composed *wholly* of," as is sometimes the case in such provisions.

A review of the authorities discloses the fact that the statutory phrase "composed of" a given material has rarely, if ever, been interpreted as requiring that the article in question should be composed exclusively of that material; sometimes, however, it has been interpreted as requiring that the designated article should be composed entirely of the given material, permitting, nevertheless, an insignificant or negligible amount of other material to be added thereto; but the decided weight of the authorities has established the rule that in general the phrase in question requires no more than that the designated article should be composed in chief value of the given material, even though a substantial minor value of the article may be composed of some other material. And especially does this rule apply in instances like the present one, where the material of chief value distinctly preponderates in respect to the bulk and form of the given article.

In the case of Fisk *v.* Arthur (103 U. S., 431) the Supreme Court had before it certain "manufactured shirtings, not made up, composed of linen and cotton, the cotton being the material of chief value and largely predominating." The court held the merchandise to be dutiable under a provision for "all other manufactures of cotton, not otherwise provided for" (tariff act of June 24, 1864).

The importers' claim for assessment of the goods under a provision for "manufactures not otherwise provided for, composed of mixed materials, in part of cotton, silk, wool or worsted, or flax" was overruled, the court holding the latter provision to be descriptive and the former to be denominative of the merchandise in question.

In the case of Swan *v.* Arthur (103 U. S., 597) the Supreme Court held that certain imported laces, ribbons, galloons, and braids composed of silk and cotton, the silk, however, preponderating so largely that they were substantially silk, were dutiable under a provision for silk laces, ribbons, galloons, and braids in the tariff act of June 30, 1864. Mr. Chief Justice Waite, speaking for the court, said:

> Outside of commerce there can hardly be a doubt that laces, ribbons, galloons, and braids made substantially of silk would be denominated silk goods.

In the case of Drew *v.* Grinnell (115 U. S., 477) the Supreme Court dealt with laces composed of silk and cotton, silk being in chief value, which were assessed under a provision for "silk laces" of the tariff act of June 30, 1864, the importers claiming assessment under a provision of the same act for "all manufactures of silk, or of which silk is the component material of chief value, not otherwise provided for." The court approved a charge given to the jury that the article in question "was a silk lace within the meaning of the act if it was a lace of which silk was the component material of chief value, unless, at the time the act was passed, it was commercially known by importers and dealers in such articles in this country as a different article." It appeared in the testimony that the article in question was commercially known as "spotted or dotted net," but was a lace and that the term silk laces was applied commercially to all laces made wholly or substantially of silk. It should be observed, however, that the charge to the jury, which was approved by the Supreme Court, did not require proof of commercial designation in order to sustain the assessment of the article as silk lace if it appeared that silk was the component material of chief value.

In the case of Arthur *v.* Butterfield (125 U. S., 70) the Supreme Court had before it an issue relating to certain woven fabrics manufactured of cotton and goat's hair, the goat's hair composing 80 per cent of the entire value of the fabric and the cotton 20 per cent. The goods were known in the trade under such specific names as brilliantines, lustrines, alpacas, and mohairs. They were held to be dutiable under a provision for "manufactures of hair not otherwise herein provided for" under the tariff act of July 14, 1870, rather than under a provision for "women's and children's dress goods and real or imitation Italian cloths, composed wholly or in part of wool, worsted, the hair of the alpaca, goat, or other like animals." Mr. Justice Field, speaking for the court, said:

> The designation of a cloth, as hair, silk, or cotton, depends on the predominance of such article in its composition, and not upon absence of any other material.

In the case of United States v. Mulhens et al. (4 Ct. Cust. Appls., 496; T. D. 33917) this court had before it a certain article composed of a glass bottle permanently covered by woven willow strands, some of them having also a metal top. Willow was the material of chief value in the composition of the article as an entirety. The articles were assessed as manufactures of willow under paragraph 212, tariff act of 1909. The court sustained that assessment, overruling the importers' claim for assessment of the merchandise as bottles within paragraph 97 of the same act. Judge Barber, speaking for the court, said:

We think this method of combining the willow and the bottle in the one case and the bottle with its metal top and the willow in the other case clearly brings the importations within the definition of a manufacture, and, willow being concededly the component material of chief value, we think it should be classified as a manufacture of willow under paragraph 214, at least so per force of paragraph 481, as claimed by the Government.

See also Kenyon Co. v. United States (4 Ct. Cust. Appls., 344, 345; T. D. 33529).

In the Rheims case (T. D. 28143) the Board of General Appraisers had before it certain braids composed of straw and cotton, the straw comprising 71.18 per cent of the braid in quantity and about three-fourths of its value, cotton being the other material. The articles were held by the board to be free of duty as "braids  *  *  *  composed of straw" under paragraph 518, tariff act of 1890. This decision of the board was affirmed by the United States Circuit Court for the Southern District of New York in the case of United States v. Rheims (T. D. 28143), wherein Wheeler, District Judge, said:

The straw braid in question is composed principally, although not wholly, of straw, and in small part of cotton, and is suitable for ornamenting hats. It therefore seems to come within the description of a braid composed of straw suitable for that purpose.

On appeal the foregoing decision was affirmed by the Circuit Court of Appeals, Second Circuit (89 Fed., 1020) and the Government acquiesced (T. D. 15625).

In the case of United States v. Churchill (106 Fed., 672) the United States Circuit Court for the Southern District of New York held that certain "union crash" composed of flax, jute, and cotton, cotton being of chief value, was dutiable under the provision for "all manufactures of cotton not specially provided for" under paragraph 322, tariff act of 1897. Townsend, District Judge, speaking for the court, said:

The sole remaining question, therefore, is whether paragraph 322 includes manufactures of which cotton is the component material of chief value. I understand the law to be so that the term "manufactures of cotton" includes manufactures composed chiefly of cotton in the above sense, and the decision of the Board of General Appraisers is therefore affirmed.

In the case of the Alms & Doepke Co., G. A. 4532 (T. D. 21542) the Board of General Appraisers held that certain woven towels composed of cotton and flax, cotton being chief value, were dutiable under the provision for "manufactures of cotton" in paragraph 322, tariff act of 1897. Fisher, General Appraiser, speaking for the board, said:

If the component of chief value in this merchandise is cotton, as is claimed by the importers here, it must be considered as a manufacture of cotton, and thus falls within the provisions of paragraph 322. The authorities have generally held that where the language of the paragraph provides for a manufacture of a certain kind, as, for instance, cotton, an article or fabric made out of such material in chief is included.

The foregoing rule of decision was adopted by the board in the following cases: Souhami & Bro. case, concerning shoes made of leather, G. A. 5060 (T. D. 23464); Sheldon & Co. case, concerning pipes and pipe bowls made of clay, G. A. 5065 (T. D. 23473); Bloch & Co. case, concerning steins, G. A. 5523 (T. D. 24866); Kraemer case, concerning catheters and bougies in chief value of cotton or silk, G. A. 6112 (T. D. 26609).

The foregoing interpretations of the phrase in question may fairly be regarded as having received a measure of legislative approval from the continued use of the same phrase in the same manner in succeeding tariff enactments, and justify the conclusion that a tariff provision for a manufactured article "composed of" a certain material applies, in the absence of other controlling rules of construction, to the appropriate article if composed in chief value of the given material. This conclusion is decisive of the present case.

It may be argued that paragraph 167, act of 1913, provides in terms for articles which are manufactured wholly or in chief value of metal, and that this provision should control the present merchandise notwithstanding the foregoing rule of interpretation. In answer to this, however, it may be said that the special enumeration in paragraph 356, *supra,* of articles valued above 20 cents per dozen pieces designed to be worn on apparel or carried on or about or attached to the person, composed (in chief value) of metal, is more specific as applied to the present merchandise than the provisions of paragraph 167, *supra,* for articles or wares *not specially provided for,* composed wholly or in chief value of metal. Therefore if the present articles respond to both descriptions the limited paragraph under which they are assessed should control rather than the general and residuary paragraph claimed by the protest.

It may be noted that the provision now under review contains also the following clause, "and whether or not set with precious or semi-precious stones, pearls, cameos, coral, or amber, or with imitation precious stones or imitation pearls." The importers contend that this language negatives the "chief value construction," because if the paragraph were to be limited to articles in chief value of metal, any

article set with diamonds would be excluded therefrom, because the diamonds in such case would always be chief value.

In answer to this it may be said that the phrase "composed of metal" in the present construction applies to the articles described in the provision as they exist before the precious stones may be added to them. It is true that such articles when mounted with precious stones could hardly ever be composed in chief value of metal, and it is of course certain that they could not then be composed exclusively of metal. So that the suggested difficulty applies more obviously to the construction proposed by the importers than to that adopted by the Government. It is, however, avoided in both cases by taking the articles before they are mounted with precious stones as the objects which are to be "composed of metal."

It should be noted that the conclusion thus reached does not imply that the phrase "composed of" must invariably carry the meaning herein given it. In some cases proof of commercial designation may furnish a different rule of construction. Other cases may be determined by the context of the phrase or by modifying terms such as "wholly" or "in part" or by an *eo nomine* designation of an article whose component materials may be unmistakably within the common knowledge, or the issue may depend upon a comparison between the terms of contrasted or competing provisions. The case of the United States *v.* Burne (4 Ct. Cust. Appls., 298; T. D. 33515) illustrates this statement. The merchandise in that case consisted of men's knitted gloves which were composed in chief value of cotton but had also a substantial minor portion of wool. There were two provisions in the controlling act which were applicable to the goods, one being for men's knitted cotton gloves, the other being for articles of wearing apparel of every description composed wholly or *in part* of wool. It was held by the court that the gloves in question were in part of wool and that this fact should govern their classification. It was plainly the legislative purpose that any substantial portion of wool in such an article should make it assessable as a woolen article. The decision in that case is approved.

In the present case, however, the general rule of interpretation above adopted obtains, and the decision of the board is therefore *affirmed.*