ANDREWS & CO. (INC.) v. UNITED STATES (No. 2224).[1]

1. RELATIVE SPECIFICITY.

The call of paragraph 356, tariff act of 1913, for "articles valued above 20 cents per dozen pieces designed to be worn on apparel or carried on or about or attached to the person, such as * * *," etc., is plainly more specific than that of paragraph 114 for steel wire and articles manufactured thereof, or that of paragraph 167 for articles not specially provided for if composed of metal, including such as are plated with gold or silver.

2. SLEEVE HOLDERS OF COILED WIRE.

Sleeve holders made of coiled steel wire which has been nickel plated and gilded or thinly washed with silver are dutiable under paragraph 356, tariff act of 1913, as "articles * * * designed to be worn on apparel or carried on or about or attached to the person, such as * * *," etc.

United States Court of Customs Appeals, May 24, 1923.

APPEAL from Board of United States General Appraisers, G. A. 8579 (T. D. 39290), and Abstract 45394.

[Affirmed.]

Ethelbert V. Grabill (Flye, Grabill, Butterick & James of counsel) for appellant.

William W. Hoppin, Assistant Attorney General (Charles D. Lawrence and Abraham Goodman, special attorneys, of counsel), for the United States.

[Oral argument May 8, 1923, by Mr. Grabill and Mr. Lawrence.]

Before MARTIN, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges.

MARTIN, Presiding Judge, delivered the opinion of the court:

The merchandise involved in this case consists of certain so-called arm bands or sleeve holders having the form and appearance of bracelets. They are made of coiled steel wire and are worn around the arm to hold up the sleeve, or around the leg to hold up the stocking. The steel wire is slender and finely tempered and is constructed in a compact spiral coil. It is capable of great spring-like extension and is provided with a cotton tape inside of the coil in order to prevent overstretching. The wire is first plated with

---

[1] T. D. 39658.

nickel, and is then either gilded or thinly washed with silver.  The article is composed in chief value of metal, and is valued at more than 20 cents per dozen pieces.  It is manufactured by a company which does not manufacture jewelry, and it is not sold to jewelers, but is handled solely by "gents' furnishing stores."  As stated by the importer its use is to retain the shirt sleeve or stocking in position precisely as an elastic band or garter does, and its principal selling point is that it is practically imperishable, while a rubber band is not, that it is not heating as a rubber band is, and moreover its pressure on the arm is very even, however much it may be stretched.

The collector assessed duty upon the merchandise at the rate of 60 per cent ad valorem, under the following enumeration contained in paragraph 356, tariff act of 1913, to wit:

* * *  and articles valued above 20 cents per dozen pieces designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, card cases, chains, cigar cases, cigar cutters, cigar holders, cigarette cases, cigarette holders, coin holders, collar, cuff, and dress buttons, combs, match boxes, mesh bags and purses, millinery, military, and hair ornaments, pins, powder cases, stamp cases, vanity cases, and like articles; all the foregoing and parts thereof, finished or partly finished, composed of metal, whether or not enameled, washed, covered, or plated,  * * *.

The importer protested against the assessment, claiming that the merchandise was properly dutiable at the rate of 15 per cent ad valorem under paragraph 114, or alternatively at the rate of 50 per cent ad valorem under paragraph 167 of the act.  The first of these paragraphs relates, among other things, to steel wire and articles manufactured thereof, and the second to articles not specially provided for if composed of metal, including such as are plated with gold or silver.  It is clear that the present merchandise would answer to either of those descriptions, and that it should be assessed with duty under one of them unless it be found to respond also to the enumerations contained in paragraph 356, supra.  In the latter event that paragraph would govern the assessment, since it is plainly more specific in character than either of the other two.

The protest was overruled by the Board of General Appraisers upon the ground that paragraph 356 was the controlling one, and the importer appealed.

We think that the present articles answer to the enumerations of paragraph 356 under which they were assessed by the collector and that the decision of the board sustaining the assessment should accordingly be affirmed.  The articles are conceded to be composed in chief value of metal, they are valued at more than 20 cents per dozen pieces, and they are designed to be worn on apparel or carried on or about or attached to the person of the wearer.  It is true that they are not jewelry and are not worn for purposes of adornment; in fact, they are concealed by the clothing when in use, nevertheless

they have a neat and even ornamental appearance, and in point of use they bear a similitude to the articles specified in the provision in question, since like them they are carried upon the person as "incidental articles of mere personal comfort, convenience, or adornment." In that particular they closely resemble collar and cuff buttons which appear among the eo nomine specifications of the provision, and while such articles are not actual or commercial jewelry, they are classified for duty as constructively belonging to that class of merchandise.

Accordingly we think that the present case is ruled by the decision of this court in Gallagher & Ascher v. United States (6 Ct. Cust. Appls. 105; T. D. 35343), from which we quote as follows:

> The controlling question in this provision, outside of the question of value and material, seems to be whether the articles in question are designed to be worn on apparel or carried on or about or attached to the person in the same manner as are the enumerated articles and like articles when in their customary use. * * *
>
> It may be observed that the articles which are enumerated in the disputed provision are numerous and in some respects diverse. Some of them are wholly ornamental in character, for example, "vanity cases" and "millinery ornaments;" some are wholly utilitarian, for example, "cigar cutters" and "match boxes;" some may be both ornamental and useful, for example, "chains" and "cuff buttons." In one particular, however, they are all alike, and that is that in their customary use they are all carried upon the person of the user, not for warmth or protection like clothing, but rather as incidental articles of mere personal comfort, convenience, or adornment. This characteristic belongs also to the metal pencils now in question, and brings them within the provision for "like articles," which follows the list of enumerated articles in the paragraph.

See also Hensel v. United States (6 Ct. Cust. Appls. 162; T. D 35434); Bischoff v. United States (7 Ct. Cust. Appls. 138; T. D. 36458); Rumpp & Sons v. United States (7 Ct. Cust. Appls. 203; T. D. 36507); United States v. Gluck & Sons (8 Ct. Cust. Appls. 11; T. D. 37160).

In the Bischoff case, supra, the court commented upon the provisions of paragraph 356, as follows:

> Paragraph 356 does not contain the n. s. p. f. provision. It is commonly referred to as the jewelry paragraph, but manifestly includes things not strictly such. The clause particularly under consideration here enumerates with the introduction "such as and including" many articles that promote the comfort or convenience of the person, the principal purpose of some of which may be adornment with some degree of utility, while in others the utilitarian purpose is predominant and adornment subsidiary, all, however, possessing the characteristics of jewelry in that they are carried on or about or attached to the person. The quoted introductory words indicate that the denominatively mentioned articles are to be regarded, so far as they go, not only as eo nomine provisions, but illustrative as well, and the words "like articles" following this eo nomine enumeration emphasize the intent that the articles therein expressly named and like articles not specifically mentioned, but *like in purpose* and *like in use* are to be included within it.

We think that the present merchandise comes within the foregoing definitions with sufficient clearness to preclude the application of

the principle that the importer should under certain circumstances have the benefit of the doubt.

In several cases before this court the question has arisen whether wristlets or straps for holding wrist watches in place were dutiable under the foregoing provision of paragraph 356. It was held that they did not come within that classification, since "they were not worn on the person as incidental articles of mere personal comfort, convenience, or adornment, but as a necessary and useful attachment to the watch itself," watches being dutiable elsewhere under an eo nomine provision of the act. United States *v.* European Watch Co. (11 Ct. Cust. Appls. 363; T. D. 39160). See also United States *v.* Wittnauer Co. (8 Ct. Cust. Appls. 370; T. D. 37628); United States *v.* Strassburger & Co. (9 Ct. Cust. Appls. 138; T. D. 37982). These decisions, however, are not inconsistent with the interpretation of paragraph 356 enunciated in the Gallagher & Ascher case, supra, since the articles considered in that case, to wit, so-called prorepel lead pencils, were complete within themselves and capable of independent use. The present arm bands also possess that characteristic.

The appellant has cited us to our decision in the case of Kresge Co. *v.* United States (11 Ct. Cust. Appls. 396; T. D. 39318), wherein certain folding pocket scissors were classified by the court under the eo nomine provision for "scissors" in paragraph 127, tariff act of 1913, rather than as articles designed to be carried on or about the person under paragraph 356. That decision, however, does not differ from the Gallagher & Ascher decision nor from our conclusion in the present case, since the classification of the merchandise therein followed an eo nomine provision for scissors, and that enumeration was regarded as controlling when brought into competition with the provisions of paragraph 356. However, neither the prorepel pencils of the Gallagher & Ascher case, nor the arm bands of this case, are mentioned eo nomine in the act; consequently such a comparison is not involved in either case.

The decision of the board is accordingly *affirmed*.