118

United States Court of Customs Appeals, May 7, 1927

*Charles D. Lawrence*, Assistant Attorney General (*Philip Stein*, special attorney, of counsel), for the United States.

*B. A. Levett* for appellee.

[Oral argument April 20, 1927, by Mr. Lawrence and Mr. Levett]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

Among a great number of items in several entries the classification of item 5099, invoiced as key chains, is the only one in dispute here. This item consists of a number of cards containing six key chains, each of which chains is made of metal, about 16 inches in length, less than five-sixteenths of an inch in diameter, with a spring hook or snap at one end and a piece of leather attached permanently to the other end, which leather contains a buttonhole resembling the leather end usually found on suspenders where they are attached to trouser buttons.

The testimony shows that they are sold to the hardware trade and the notions trade; they are sold for hunting purposes; are used by fishermen and others for carrying bunches of keys attached to the pocket, and for carrying pencils attached to them; that they are sometimes used to hold keys hung on the wall to be used for opening the doors to common toilets; they are hung or attached to boats to hold keys, knives, etc.

The collector of customs at the port of New York assessed duty upon the merchandise at 80 per centum ad valorem under paragraph 1428, Tariff Act of 1922, as "key chains composed of metal, valued at more than 20 cents per dozen pieces, and designed to be worn on the person." The importers protested the classification, claiming them to be properly dutiable at 4 cents per pound under paragraph 329, or at 40 per centum ad valorem under paragraph 399.

---

[1] T. D. 42191.

The pertinent portions of paragraphs 329 and 399 are as follows:

PAR. 329. Chain and chains of all kinds, made of iron or steel, * * * less than five-sixteenths of one inch in diameter; * * *

PAR. 399. Articles or wares not specially provided for, if composed wholly or in chief value * * * of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, * * *.

The United States Customs Court sustained the protest of importers and held the merchandise dutiable under paragraph 329 as chains, grounding its decision upon *United States* v. *Kress & Co.*, 13 Ct. Cust. Appls. 66, and *Horstmann* v. *United States*, G. A., 9101 49 Treas. Dec. 415, which latter case was affirmed by this court after the decision of the trial court in this case, 14 Ct. Cust. Appls. 443, T. D. 42079.

The applicable portion of paragraph 1428 reads as follows:

PAR. 1428. * * * articles valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, card cases, chains, cigar cases, cigar cutters, cigar holders, cigarette cases, cigarette holders, coin holders, collar, cuff, and dress buttons, combs, match boxes, mesh bags and purses, millinery, military and hair ornaments, pins, powder cases, stamp cases, vanity cases, and like articles; * * * finished or partly finished, composed of metal, whether or not enameled, washed, covered, or plated, * * * and whether or not set with precious or semi-precious stones * * *.

In *Gallagher & Ascher* v. *United States*, 6 Ct. Cust. Appls. 105, in an opinion delivered by Judge Martin concerning prorepel lead pencils, this court said:

The controlling question in this provision, outside of the question of value and material, seems to be whether the articles in question are designed to be worn on apparel or carried on or about or attached to the person in the same manner as are the enumerated articles and like articles when in their customary use. If the assessed articles do not resemble the enumerated ones in that particular, then they would not fall within the present provision, whatever might be their resemblance to the exemplar articles or some of them in any other particular. On the other hand, if the assessed articles are similar to the prescribed exemplars in respect to the manner in which they are worn or customarily carried upon the person, then the resemblance is sufficient to satisfy the terms of the provision. The rule of ejusdem generis is thus limited by the paragraph to the single controlling resemblance just defined.

It may be observed that the articles which are enumerated in the disputed provision are numerous and in some respects diverse. Some of them are wholly ornamental in character, for example, "vanity cases" and "millinery ornaments"; some are wholly utilitarian, for example, "cigar cutters" and "match boxes"; some may be both ornamental and useful, for example, "chains" and "cuff buttons." In one particular, however, they are all alike, and that is that in their customary use they are all carried upon the person of the user, not for warmth or protection like clothing, but rather as incidental articles of mere personal comfort, convenience, or adornment. This characteristic belongs also to the metal pencils now in question, and brings them within the provision for "like articles," which follows the list of enumerated articles in the paragraph.

It will be noted that the merchandise, prorepel lead pencils, was not mentioned by name in the paragraph, and the rule that the article, if not named in the paragraph, to be *ejusdem generis* with articles which are named, must be such as are "incidental articles of mere personal comfort, convenience, or adornment."

This court has frequently followed the rule laid down in the Gallagher case, in applying to various kinds of importations the provisions of paragraph 1428, or a similar provision in the tariff act of 1913. *United States* v. *Sussfeld, Lorsch & Co.*, 7 Ct. Cust. Appls. 126; *Rump & Sons et al.* v. *United States*, 7 Ct. Cust. Appls. 203; *Andrews & Co.* v. *United States*, 11 Ct. Cust. Appls. 502; *United States* v. *Kress & Co.*, 13 Ct. Cust. Appls. 66; *United States* v. *Horstmann Co.*, 14 Ct. Cust. Appls. 443, T. D. 42079, 49 Treas. Dec. 415.

The decision of this case calls for some discussion of the last two above-cited cases, since, apparently, they were of controlling influence with the trial court. The *Kress* case, *supra*, involved heavy steel key rings attached to steel snap hooks having leather loops. This court there applied the doctrine laid down in the *Gallagher* case, and held that in order for the importation to come within the purview of the provision they *"must be designed* to be worn on the apparel or to be carried on or about or attached to the person." (Italics quoted.) The opinion of the court states:

The key rings involved in this case are suitable to be carried on or about the person, but they were not designed or made for that purpose.

In the case at bar, the collector found that the articles in controversy were designed to be worn on the person. The testimony in the case confirms rather than controverts this fact. An examination of the sample, we think, is convincing that they were designed to be worn on the person, since the buttonhole piece of leather is permanently attached to the chain.

In the *Horstmann* case, *supra*, the controversy arose over brass saber chains, nickel-plated, and designed to be worn on apparel. They were held by this court as not properly classifiable under paragraph 1428. The saber chain had a snap at one end and a snap and a hook at the other. The proof showed that it was an essential part of the equipment of a military officer and was used to attach a saber scabbard to an officer's belt, and that it had no other use. This court held as follows:

It will be observed by a careful review of the cases cited, that one of the fundamental requisites for classification under the provisions of paragraph 1428 in question, of articles not *eo nomine* provided for, is that such articles must be designed to be worn on apparel or carried on or about or attached to the person as *"incidental* articles of *mere personal comfort, convenience, or adornment."*

(Italics not quoted.) Such articles may be of utility or of adornment, or they may possess both of these qualities; but unless they are designed to be worn or carried or attached to the person for mere personal comfort, convenience, or adornment, they can not be classified under the provisions in question.

It is true that these decisions relate to articles not enumerated in the paragraph by name. However, it was there definitely pointed out that articles not enumerated by name must, in order to be classifiable thereunder, be like those enumerated; and, in order to be like such articles, they must be "incidental articles of *mere personal comfort, convenience, or adornment*." (Italics not quoted.) If articles not provided for by name must answer to the description of "incidental articles of mere personal comfort, convenience, or adornment," in order to be like those *eo nomine* provided for, it follows that those intended to be included within the *eo nomine* provisions are of that character. Accordingly, articles not of that character were not intended to be covered by the provisions in question even though they respond generally to *eo nomine* designations therein.

The chains in question were designed for the exclusive use of officers in the military service. They are an essential part of such officers' equipment—made such by military regulations and worn as such. They are not worn as incidental articles of mere personal comfort, convenience, or adornment, but as an essential part of their equipment. The chains in question are vocational articles; and while chains are *eo nomine* provided for in paragraph 1428, these are not the kind intended to be covered by that designation. *United States* v. *Sussfeld, Lorsch & Co., supra.*

The *Horstmann* case turned upon the proposition that the importation was not an incidental article of mere personal comfort, convenience, or adornment, but was an essential part of an officer's equipment made so by military regulations. The natural inference to be drawn from the decision in the *Horstmann* case is that the saber chain was regarded as not being worn for the personal comfort, convenience, or adornment of the officer, but regardless of whether it was comfortable, or convenient, or ornamental, he was required to wear it, and did wear it, because of a compelling regulation.

No such question is involved in the decision of the case at bar. The key chains in controversy are designed to be worn on apparel or carried on or about or attached to the person. They are "chains"; they are not only named in the paragraph but they are *ejusdem generis* with the other articles named; they are valued above 20 cents per dozen pieces; and they are composed of metal. We think they are more aptly and specifically described in the above-quoted provision of paragraph 1428 than elsewhere, and were properly assessed by the collector. See 29 Treas. Dec. 140, Abstract 38192, where key chains of aluminum were held to be properly dutiable under paragraph 356 of the tariff act of 1913, which was almost identical to that portion of paragraph 1428 now under consideration; also see 33 Treas. Dec. 572, Abstract 41270, where key chains made of iron or steel, designed for holding keys carried on the person, or in the pocket of the wearer, were also classified under paragraph 356; also see T. D. 38721, G. A. 8437, 39 Treas. Dec. 332, involving steel key

chains, where the collector's classification under paragraph 356 was affirmed.

It would seem to us that there is little, if any, support for importers' contention and the trial court's decision in any of the decided cases, and that if "chains" in paragraph 1428 was meant to cover any kind of imported merchandise, it certainly includes the article in controversy.

The judgment of the United States Customs Court is *reversed*.