UNITED STATES *v.* BAILEY, GREEN & ELGER (No. 3359) [1]

United States Court of Customs and Patent Appeals, January 28, 1931

*Charles D. Lawrence,* Assistant Attorney General (*James R. Ryan* and *Ralph Folks,* special attorneys, of counsel), for the United States.
*Brown & Carter* (*Allan R. Brown* and *Fred J. Carter* of counsel) for appellees.

[Oral argument December 12, 1930, by Mr. Folks and Mr. Brown]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

The Government has here appealed from a judgment of the United States Customs Court sustaining, in part, certain protests of appellees against the classification by the collector of buttons (stipulated to be in chief value of glass), under paragraph 1428 of the, Tariff Act of 1922, duty being assessed thereon by the collector at 80 per centum ad valorem.

The Customs Court held the articles dutiable at 45 per centum ad valorem as being "buttons not specially provided for," falling within

---

[1] T. D. 44637.

paragraph 1411 of said act, construing the words "composed of metal" in paragraph 1428 to mean "not only * * * composed entirely of metal, but also in chief value thereof," citing *Hawley & Letzerich* v. *United States*, 6 Ct. Cust. Appls. 45, T. D. 35322; *Hensel et al.* v. *United States*, 6 Ct. Cust. Appls. 162. T. D. 35434; *American Shipping Co.* case, Abstract 4853, 54 Treas. Dec. 602.

The final stipulation of counsel in this case reads as follows:

It is hereby stipulated and agreed between counsel that items 3184 and 3185 on entry 831913 consist of dress buttons designed to be worn on apparel; that they are composed of glass and metal, glass being the component material of chief value; that the glass is in the form of imitation precious stones; that the sample herewith correctly represents the merchandise and may be received in evidence as Exhibit 1; and that the protest may be submitted upon this stipulation and all the papers in the case.

It is further stipulated and agreed that the protest may be limited to items 3184 and 3185 and to the claim at 45 per centum ad valorem under paragraph 1411.

This stipulation and Exhibit 1, representative of the merchandise in issue, constitute the only evidence in the case.

The material portion of paragraph 1428 reads:

* * * articles valued above 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, * * * collar, cuff, and dress buttons, * * * millinery, military, and hair ornaments, * * * and like articles; all the foregoing and parts thereof, finished or partly finished, composed of metal, * * * whether or not set with * * * imitation precious stones * * * .

Paragraph 1411 is in the following language:

PAR. 1411. Buttons. commonly known as agate buttons, 15 per centum ad valorem; parts of buttons and button molds or blanks, finished or unfinished, not specially provided for, and all collar and cuff buttons and studs composed wholly of bone, mother-of-pearl, ivory, vegetable ivory, or agate, and buttons not specially provided for, 45 per centum ad valorem.

The contention of the Government before us may be summarized in the statement that (1) the dress buttons involved are composed of metal set with imitation precious stones; (2) the statute must be so construed as to give effect to the entire statute in order to carry out the intent of Congress; (3) by applying the doctrine of use and relative specificity and by recognizing the *eo nomine* designation of "dress buttons," contained in the paragraph, the statute may be construed so as to reconcile the provisions of both 1411 and 1428; (4) the provision of 1428 is a classification by use and as such prevails over other provisions, even *eo nomine* designations, and (5) paragraph 1428 is both an *eo nomine* designation and a classification by use. It is more specific and prevails over the general provision for "buttons not specially provided for" in 1411.

Appellees' contention is that under the doctrine of the cases cited, *supra*, by the court below, and under that declared by this court in

*Kenyon & Co.* v. *United States*, 4 Ct. Cust. Appls. 344, T. D. 33529, and *United States* v. *Heller Co.*, 13 Ct. Cust. Appls. 227, T. D. 41178, the articles, in order to be properly classified under paragraph 1428, must be wholly or in chief value of *metal;* and that, admitting 1428 to be more specific than 1411, the former paragraph still does not apply because the merchandise is not within the paragraph, being removed therefrom by the fact that it is in chief value of *glass.*

The *Kenyon* case, *supra,* arose under the Tariff Act of 1909. The merchandise at issue therein was waterproof cloth which the Board of General Appraisers (now the United States Customs Court) found to be composed in chief value of india rubber. The board sustained the classification made by the collector, holding the *eo nomine* provision for "waterproof cloth composed of cotton or other vegetable fiber, whether composed in part of india rubber or otherwise," to be more specific than "manufactures of * * * india rubber" in paragraph 463 of said act.

This court, in an opinion by Judge De Vries, reversed the judgment of the board (now the United States Customs Court), saying, among other things:

> We are of the opinion that the case is not determined by the abstract proposition of the relative specificity of the competing provisions of the tariff law, as held by the board. They are, indeed, the applicable ones, but we are of the view that the decisive question is whether or not this importation upon the facts found falls within the language of paragraph 347.

Paragraph 347 was then analyzed and divided into its three elemental parts: "1. Waterproof cloth. 2. Composed of cotton or other vegetable fiber. 3. Whether *composed in part of* india rubber or otherwise" (italics quoted), and the opinion continued with a discussion of the judicial construction of the words "composed of," "made of," etc., this portion of the opinion concluding with the statement that—

> "Composed of" and all these kindred expressions, relate to, affect, and control the component materials of the article. In order to give them any effect whatever the component material designated must constitute or compose at least the chief value in the article.

The *Hensel et al.* case, *supra,* arose under the Tariff Act of 1913. The merchandise involved was a type of novelty lead pencil, "composed of a metal barrel, which has at one end a tapering tube or nozzle made of gallilith."

The assessment for duty by the collector was under a part of paragraph 356 of said act (which, except as to rates, was virtually the same as that part of paragraph 1428 of the act of 1922 here involved) providing for articles composed of metal designed to be carried on or about or attached to the person.

The protest claimed the dutiable status to be as articles composed in chief value of metal, under paragraph 167 (1913 act), the residuary paragraph of the metal schedule therein.

The Board of General Appraisers (now the United States Customs Court) overruled the protest and its judgment was affirmed by this court.

In the case of *United States* v. *Heller Co.*, *supra*, the articles consisted of steel hatpins with spangle heads, the spangles being a "chemical paste production" and constituting "the component material of·chief value." They were assessed for duty under paragraph 1428 (1922 act), but the trial court held them dutiable under paragraph 1403, which judgment was affirmed by this court, but the issue then presented to this court was not as to paragraphs 1428 and 1403, but as to 1430 and 1403. In the course of our opinion it was said:

Inasmuch, however, as upon analysis it turned out, as shown by the record, that metal was not the component material of chief value, it is apparent that these pins were not classifiable under that part of paragraph 1428, and the Government in its brief so admits.

In the *Hawley* case, *supra*, the merchandise was bagging for cotton. The contesting paragraphs were 355 and 358 of the Tariff Act of 1909. This court held paragraph 355 to be applicable. An analysis of the case is not deemed important here.

Obviously, appellees' chief reliance here is upon the *Kenyon* case, *supra*, and the argument that the doctrine there laid down, following authorities cited therein, applies here is urged with great earnestness and much plausibility. We are not convinced, however, that appellees are correct.

Broadly speaking, we feel assured that it was not the intent of Congress to bring about such a result as must follow from the decision of the court below, viz, to admit relatively valuable dress buttons, specifically named in paragraph 1428 and specifically described as *set* with imitation precious stones (the words being "whether or not set * * * "), at a rate of duty much less than relatively cheap purely metal buttons are admitted. That this is contrary to the general legislative policy is a matter of common knowledge. As of course, cases arise in which the language used in tariff acts does not admit of a construction which will prevent such a result being reached, and it is not the business of the courts to legislate. We quite agree with appellees that "the only way to carry out the intention of Congress is to do just what Congress has said," but we can not agree that Congress has said that paragraph 1428 excludes, or that it would be proper to construe it to exclude, the articles at issue.

We agree with the contention of the Government here that it is the duty of the courts to construe the entire tariff act so as to give effect

to all its parts unless such construction is obviously impossible. This must be done if we would carry out the legislative intent. This rule of law is so generally known and accepted as to require no citation of authority here.

We are not, therefore, at liberty to read the words "whether or not set * * * with imitation precious stones" out of paragraph 1428, or to transpose articles to which it applies to some other paragraph. The Congress put the clause there and evidently had a purpose in so doing. If Congress did not intend to include buttons such as those here involved by using that clause we are at a loss in trying to conjecture what was intended.

An examination of the exhibit discloses that it has a metal part so indented as to permit the insertion as settings of the imitation stones or glass pieces.

The words of paragraph 1428 applicable to the merchandise in issue are "dress buttons * * * *composed of* metal * * * whether or not *set* with * * * imitation precious stones * * *." (Italics ours.)

The buttons here at issue precisely meet that language. It is true the stipulation says, "that they are composed of glass and metal, glass being the component material of chief value," but it adds "that the glass is in the form of imitation semiprecious stones" and also adds "that the sample herewith correctly represents the merchandise and may be received in evidence as Exhibit 1." The preliminary statement is that the buttons are "designed to be worn on apparel."

The stipulation, of course, must be taken as a whole and considered with the exhibit in order to ascertain the exact character of the article.

In paragraph 1428 Congress made provision for numerous articles designed to be worn on apparel, or carried on or about or attached to the person, when such articles are valued at more than 20 cents per dozen. Dress buttons set with imitation precious stones are *eo nomine* provided for therein when composed of metal, "*whether or not*" the metal be "enameled, washed, covered or plated, including rolled gold plate." (Italics ours.)

To construe the words "composed of metal" to mean "entirely of metal" and also "in chief value thereof," obviously, would take from the paragraph all metal buttons set with precious or imitation precious stones, because it is difficult to imagine any buttons of base metal set with such stones where the metal would be the element of chief value. The paragraph provides for articles valued as cheaply as just above 20 cents per dozen.

In our view of the merchandise involved the imitation precious stones—the glass pieces—are such settings in the buttons as are con-

templated by the language of paragraph 1428. They enter into the composition of the buttons, it is true, but they enter into it as settings. In that sense the articles may be said correctly to be composed of metal and glass, but in the contemplation of Congress the metal part, for tariff purposes, constitutes the button and the glass pieces the settings. Such a construction gives the effect which we have no doubt Congress intended when providing for metal buttons set with imitation precious stones.

If the law were construed in accordance with the contention of appellees the effect would be virtually to render nugatory that language of paragraph 1428 "whether or not set with * * * imitation precious stones." Such was not the legislative intent. We think the collector correctly classified and assessed the merchandise.

Therefore, the judgment of the Customs Court is *reversed*.